UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DeMARCUS WADE,

                    Plaintiff,                          Case No. 1:21-cv-728

v.                                                      Honorable Paul L. Maloney

M. STEPHENS et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner.  Plaintiff previously sought
and was granted leave to proceed *in forma pauperis*.  (ECF No. 4.)  Under the Prison Litigation
Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss
any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state
a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from
such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read
Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and
accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton
v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's
complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

        Plaintiff is presently incarcerated with the Michigan Department of Corrections
(MDOC) at the Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan.

The events about which he complains, however, occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.  Plaintiff sues M. Stephens and Unknown Parties, all of whom he alleges were employed in the mail room at LCF.  (ECF No. 1, PageID.2.)

Plaintiff alleges that on April 3, 2021, he received a "photocopy of an envelope, private legal documents[,] and contracts from [his] attorney via unit officer mail call."  (*Id.*, PageID.3.)  Plaintiff avers that there was a sticky note attached to the envelope, informing him that the relationship between him and the attorney had not been verified.  (*Id.*)  Therefore, the envelope had been opened outside of Plaintiff's presence.  (*Id.*)  Plaintiff claims that the sticky note was signed by Defendant Stephens.  (*Id.*)

Plaintiff seeks $2,500.00 in damages for Defendants' violation of Plaintiff's property rights and trespass.  (*Id.*, PageID.4.)

## II.    Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at

2

678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A.    § 1983 Claims

Although Plaintiff does not expressly state the federal basis for his claims, construed liberally, Plaintiff raises a claim under 42 U.S.C. § 1983 for violation of his constitutional rights.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

There are a number of constitutional rights that might be implicated by a prison official's interference with a prisoner's incoming mail.  "A prisoner's right to receive mail is protected by the First Amendment."  *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment."  *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 501 U.S. 410, 427 (1993) ("[T]he use of the mails is as much a part of free speech as the right to use our tongues.") (internal quotes omitted)).

3

But a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell v. Procunier,* 417 U.S. 817, 822 (1974); *see also Turner v. Safley,* 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (*citing Pell,* 417 U.S. at 822–23; *Procunier v. Martinez,* 416 U.S. 396, 412 (1974)).

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. at 78. And the possibility that incoming mail might introduce contraband into the prison is so obvious that courts have routinely upheld the right of prison officials to inspect incoming mail for contraband despite First Amendment free speech protection. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 574–76 (1974).

For the same reasons, a prison official's inspection of incoming mail does not violate the Fourth Amendment. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.") This Court has concluded that the reasoning in *Hudson* applies to a prisoner's incoming mail. *Hubbard v. Mann*, No. 2:21-cv-55, 2021 WL 2845099, at *9 (W.D. Mich. Jul. 8, 2021).

Because Plaintiff alleges that the mail at issue here is "legal mail" there may be additional layers of constitutional protection.  In *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003), the Sixth Circuit Court of Appeals considered multiple potential sources of protection for legal mail, including the Sixth Amendment right to counsel, the First Amendment right to petition for redress of grievances, the First Amendment right of access to the courts, and the prisoner's general interest in protecting the attorney-client privilege.   Simply calling a particular correspondence "legal mail," however, does not implicate each and every one of those protections.  For example, the Sixth Amendment right to counsel applies only to criminal prosecutions.  *Wolff*, 418 U.S. at 576–77 ("As to the Sixth Amendment, its reach is only to protect the attorney-client relations in the criminal setting . . . ."); *see also Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010).  There are no facts alleged in Plaintiff's complaint that support the inference that Plaintiff's relationship with the sending attorney related to a criminal proceeding.

The First Amendment right of access to the courts is also limited.  It applies only to certain types of court proceedings: "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  There are no facts alleged in Plaintiff's complaint that support the inference that the communication bore any relationship to Plaintiff's direct appeal of his criminal convictions, a habeas corpus application, or a civil rights claim.  Similarly, there is no suggestion that the communication related to petitioning the government to address grievances.

Plaintiff's allegations do, however, implicate the protections afforded confidential communications between attorney and client.  The Sixth Circuit has found "that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of

the judicial process and, therefore, that as a matter of law, mail from an attorney implicated a prisoner's protected legal mail rights." *Sallier*, 343 F.3d at 877.

Accepting that the correspondence at issue here was a confidential communication between Plaintiff and his attorney does not mean that Defendants' conduct with respect to that communication violated Plaintiff's constitutional "legal mail" rights.  The prison official must have some means of knowing that the correspondence is a protected communication.  Thus, in *ACLU Fund v. Livingston Cnty.*, 796 F.3d 636 (6th Cir. 2015), the court determined that the letters at issue were protected, not just because of the content of the letters, but because of the information on the envelope: "the letters were addressed to a specific inmate, clearly marked 'legal mail" and included the name and bar number of a licensed Michigan attorney." *Id.* at 644; *see also Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (defining "'legal mail' to include delivery of legal materials to a prisoner, ***properly and clearly marked as legal materials*** . . . .") (emphasis added).

This Court's review of the pertinent caselaw has led to the conclusion that "the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail [as well as] the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020) *aff'd* No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. Jun. 9, 2021) ("[T]he mail must be 'properly and clearly marked as legal materials.' . . . .  [W]hile the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney.'").  Thus, to properly allege a claim that prison officials have interfered with legal mail, Plaintiff must allege "that the mail . . . was clearly marked as legal mail [and] that it included the name and bar number of a licensed attorney." *Id*.  Plaintiff's allegations fall short in both respects.

Additionally, this Court has held that the Michigan Department of Corrections may lawfully require that inmates specifically request that their legal mail be opened in their presence. *Knop v. Johnson*, 667 F. Supp. 467, 473 (W.D. Mich. 1987) (cited in *Longmire*).  The MDOC has memorialized that requirement in Policy Directive 05.03.118, ¶¶ EE–HH (eff. Mar. 1, 2018). Plaintiff does not allege that he requested special handling in accordance with the policy. Therefore, Plaintiff also fails to state a claim in that respect.

**B.    State Law Claims**

Although Plaintiff does not identify a federal basis for his claims, he does expressly mention related potential state law claims: property rights violations and trespass.  (Compl., ECF No. 1, PageID.4.)  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction.  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against

7

needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court declines to certify that an appeal would not be taken in good faith.  This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 8, 2022                          /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge

8